**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

JACE YARBROUGH,

    Plaintiff,

v.

GENERAL B. CHANCE SALTZMAN,

    Defendant.

</td><td>

Civ. A. No. 25-3536 (JDB)

</td></tr>
</table>

<u>**MEMORANDUM OPINION & ORDER**</u>

Jace Yarbrough sued the United States Space Force, Air Force, and several individuals affiliated with those entities for admonishing him for stridently expressing his political views while in uniform. One of the individual defendants, General Saltzman, now moves to dismiss the individual-capacity claims against him. Because Yarbrough's contentions as to Saltzman are meritless, Saltzman's motion to dismiss is granted.

<u>**BACKGROUND**</u>

Yarbrough is a major in the United States Air Force Reserve. Compl. [ECF No. 1] ¶ 5. In his personal capacity, he traveled to Hawaii to speak at the retirement celebration of his friend, Senior Master Sergeant Duane Fish. Id. ¶¶ 6-8. At the event, held aboard the Battleship Missouri Memorial, Yarbrough delivered a speech while in his Air Force uniform that called on the audience to resist a "radical political faction" within the military who were fostering a culture of "incompetence and cowardice" among the ranks by requiring that service members undergo mandatory anti-extremism training. Id. ¶¶ 9, 86, 110. A Navy member who was present filed a

complaint about Yarbrough's remarks.  Id. ¶ 11.  After reviewing the complaint, Yarbrough's supervisor issued him a letter of admonishment, concluding that his remarks had been "insubordinate, disrespectful, and unbecoming of an officer in the military."  Id. ¶ 12.  In particular, the letter admonished Yarbrough for presenting his personal political views in a manner that implied those beliefs were representative of the Air Force and cited a regulation prohibiting political activity in uniform.  Id. ¶¶ 111-13.  Yarbrough challenged the letter through an internal appeals process, but those appeals were denied.  Id. ¶ 13.  His final appeal was rejected by Chief of Space Operations, General B. Chance Saltzman.  Id. ¶ 31.

Yarbrough then sued in the U.S. District Court for the Eastern District of Texas, alleging that the letter of admonishment violated his rights under the First Amendment, the Administrative Procedure Act, and the Religious Freedom Restoration Act (RFRA).  See Compl., Yarbrough v. Space Force, Civ. A. No. 23-cv-0087 (E.D. Tex. Oct. 3, 2023).  That complaint named as defendants the U.S. Space Force, the Department of the Air Force, then-Secretary of Defense Lloyd Austin, and General Saltzman.  Compl. ¶¶ 26-31.  Only the RFRA claim was brought against Saltzman in his individual capacity.

Saltzman moved to dismiss for lack of personal jurisdiction.  ECF No. 28.  The district court found that it lacked personal jurisdiction over Saltzman but transferred Yarbrough's individual capacity claim against him to this court instead of dismissing it.  Yarbrough v. United States Space Force, Civ. A. No. 23-876, 2025 WL 2607811, at *13 (E.D. Tex. Sept. 9, 2025).  Hence, only that claim is before this Court.  Saltzman, again, moved to dismiss.  Mot. to Dismiss (Mot.), ECF No. 58.  That motion is now ripe for review.

**LEGAL STANDARD**

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Accordingly, a court assessing a motion to dismiss will "assume [the] veracity" of all "well-pleaded factual allegations," id. at 679, "construe the complaint 'in favor of the plaintiff,'" and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged," Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotations omitted). A court does not, however, credit "threadbare recitals of the elements of a cause of action," "conclusory statements," Iqbal, 556 U.S. at 678 (citation modified), or "legal conclusions cast as factual allegations," Hettinga, 677 F.3d at 476 (citation omitted).

**ANALYSIS**

Yarbrough argues that Saltzman substantially burdened his religious exercise by preventing him from carrying out his religious duty to "speak truth." Compl. ¶ 9. This Court disagrees. And because Saltzman did not violate Yarbrough's religious liberty, the Court need not consider the question of whether qualified immunity applies to RFRA claims.

RFRA generally prohibits government officials from "substantially burden[ing] a person's exercise of religion." 42 U.S.C. § 2000bb-1(a). Not every burden is prohibited—only those that place "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Archdiocese of Wash. v. WMATA, 897 F.3d 314, 333 (D.C. Cir. 2018). Put another way, RFRA plaintiffs must show that the challenged action "forces them to engage in conduct that their religion

3

forbids" or "prevents them from engaging in conduct their religion requires." Henderson v. Kennedy, 253 F.3d 12, 16 (D.C. Cir. 2001) (citations omitted).

Plaintiffs must first explain which of their religious beliefs are at issue. The level of generality at which they describe those beliefs (and the associated conduct) matters because, to determine whether a burden is substantial, courts must consider the degree to which the challenged government action impedes the plaintiff's exercise of those convictions. In Henderson, the D.C. Circuit held that when a plaintiff articulates a belief at a high level of generality, such as an obligation to proselytize by "all available means," then government actions that foreclose "one of a multitude" of options of complying with that tenet do not constitute a substantial burden. 253 F.3d at 17 (rejecting RFRA claim that restrictions on selling merchandise on the national mall violated religious obligations to evangelize). In such cases, the burden imposed by government action is not substantial because the plaintiff can still adhere to the religious beliefs through other methods—the plaintiff is neither compelled to engage in prohibited conduct nor prevented from engaging in mandatory conduct. Id. at 16. By contrast, government actions that "significantly inhibit or constrain conduct" that is specifically required by a plaintiff's religion are likely to violate RFRA. Id. (quoting Werner v. McCotter, 49 F.3d 1476, 1480-81 (10th Cir. 1995) (remanding for consideration of whether denying high-security prisoner access to religious facility and religious materials substantially burdened his free exercise of religion under RFRA)).

Here, Yarbrough invokes his religious duty to "speak truth." Compl. ¶ 9. That duty motivated him to give the speech at issue, which quoted Christian intellectuals such as C.S. Lewis and Alexander Solzhenitsyn, exhorted the audience to challenge "cancel culture," and decried "radical political factions" within the military who "flex[ed]" their "political power" by requiring service members to attend anti-extremism training. Compl. ¶¶ 70, 89, 93, 110. Several members

of the military took issue with Yarbrough's speech, and he received a letter of admonishment. Letter of Admonishment [ECF No. 28-1]. That letter noted that he made his remarks in uniform and explained that Yarbrough's speech was inappropriate for implying that his personal political beliefs were representative of the Air Force. Id. The letter also referenced AFI 51-508, a regulation which prohibits reservists from offering political commentary while in uniform. Id.

Yarbrough's frontline argument is that the letter of admonishment is a substantial burden because it disciplines him for conduct that was motivated by his sincere religious beliefs. See Opp'n [ECF No. 74] at 14. That misunderstands this Circuit's RFRA jurisprudence. "To make religious motivation the critical focus is . . . to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement." Henderson, 253 F.3d at 17 (emphasis added). The appropriate inquiry must be trained on the "nexus between religious practice and religious tenet": whether the regulation meaningfully forecloses individuals' opportunities to vindicate their religious conviction. Mahoney v. Doe, 642 F.3d 1112, 1121 (D.C. Cir. 2011). Thus, the question in this case is whether the letter of admonishment placed Yarbrough in such a position.

It did not. A government action does not substantially burden religious beliefs when it merely forecloses one of a "multitude of means" at the plaintiff's disposal to satisfy that obligation. Henderson, 253 F.3d at 17. Yarbrough does not claim that his religious beliefs specifically require him to speak truth while wearing his uniform or to do so by discussing politics. He concedes that he is not required to wear his uniform routinely, and he does not contend he was required to wear it at the event in question. Compl ¶¶ 55, 85, 86. Yarbrough thus had—and still has—ample opportunity to satisfy his obligation to speak truth while complying with the regulation at issue. At most, the regulation limited one of many possible options through which Yarbrough could

satisfy his convictions.  Accordingly, under the <u>Henderson</u> standard, the government's restriction on political activity in uniform does not substantially burden Yarbrough's religious beliefs or exercise.

In response, Yarbrough claims that his case involves "distinct facts" from key D.C. Circuit precedents.  Opp'n at 15.  Namely, he argues that while <u>Henderson</u> involved a neutral regulation that prohibited "all sales" on the national mall, he was "disciplined only for what he said as an exercise of his religious beliefs."  Opp'n at 16.  He is mistaken.  Yarbrough acknowledges that the letter of admonishment took issue with his speech for violating Air Force regulations that restrict political activity while in uniform.  Compl. ¶¶ 111-113.  That regulation is facially neutral as to religion, like the ban on sales on the national mall at issue in <u>Henderson</u>.  Put another way, Yarbrough could have been disciplined for making a secularly motivated political speech, much as the <u>Henderson</u> plaintiffs would have been barred from selling secular wares.  Because the regulation is facially neutral, as in <u>Henderson</u>, it is only invalid as applied to Yarbrough if it substantially burdens his religious exercise.  And, as discussed above, the regulation is not a substantial burden because it merely limits one of many ways for Yarbrough to "speak truth."

Yarbrough makes two additional points.  First, he contends that RFRA is not limited to circumstances where a person's faith requires that an action be performed in a specific manner.  Opp'n at 15.  That is correct, but beside the point.  A plaintiff must establish that the challenged government action is a significant impediment to carrying out a religious duty.  So, when a duty is defined at a granular level—such as one that must be performed using particular materials or at a certain time of day—government actions that interfere with those particulars may constitute a substantial burden by foreclosing the plaintiff's opportunity to satisfy their religious obligation altogether.  See <u>Mack v. Yost</u>, 63 F.4th 211, 217, 227 (3d Cir. 2023) (restriction on inmate's ability

to pray at work when his religious obligation required him to pray at prescribed times constituted a substantial burden).  But for duties defined broadly—such as a duty to spread the faith or act with charity—government actions that frustrate only one of many possible ways to satisfy those requirements are permitted.  Archdiocese of Wash., 897 F.3d at 333 (restriction on advertisements on buses did not constitute a substantial burden because plaintiffs had many alternative methods for evangelization).  Accordingly, in this case, where Yarbrough's stated religious duty is quite broad—to "speak truth"—the fact that his faith did not require him to do so by discussing politics while in uniform demonstrates that the Air Force policy at issue did not seriously impede his religious duty.

Next, Yarbrough argues that wearing his military uniform does not "negate his right to exercise religion."  Opp'n at 15.  This, too, is beside the point.  RFRA expressly contemplates the notion that not all government actions that burden free exercise are unlawful.  Indeed, the point of the Henderson line of inquiry is to discern whether a burden is limited and permissible, versus substantial and impermissible.  Yarbrough has an abundance of avenues to fulfill his religious obligations, so his rights are not substantially burdened, much less negated.

Because the Air Force regulation forbidding political conduct while in uniform, and the letter of admonishment issued pursuant to it, do not substantially burden Yarbrough's religious exercise, Yarbrough's RFRA claim against Saltzman must be dismissed.  Because only Yarbrough's individual capacity claim against Saltzman was transferred here, this opinion disposes of all issues before the Court.

Yarbrough's claim is dismissed without prejudice.  Dismissal with prejudice is disfavored and courts should grant leave to amend freely.  Singletary v. Howard Univ., 939 F.3d 287, 295 (D.C. Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2)).  This Court's dismissal of his RFRA claim is

based on his failure to plead facts that entitle him to relief.  He thus has the right to try again, even though it is unlikely that he can allege facts consistent with his original complaint that would remedy the stated grounds for dismissal.

* * *

Upon consideration of [58] Saltzman's motion to dismiss, and the entire record herein, it is hereby ORDERED that the motion is GRANTED, and this action is dismissed without prejudice.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated: <u>April 3, 2026</u>